We will hear argument next in Case 2015-66, Cusser v. Thyssen-Bornemisza. Mr. Boies, I understand you're participating remotely? I am, Your Honor. You may proceed. Thank you, Mr. Chief Justice, and may it please the Court. I begin with three simple propositions. First, Respondent is a foreign state not entitled to immunity under Section 1605 of the FSIA. Second, Section 1606 of that Act provides that as to any claim for relief, such a foreign state should be liable in the same manner and to the same extent as a private individual under like circumstances. Third, if the Respondent were a private museum and every other circumstance were exactly the same, California choice of law rules would apply. It necessarily follows from these three propositions, none of which is disputed, that California choice of law rules must apply to the Respondent. Any other rule would permit courts to apply different choice of law rules and thereby different substantive rules to foreign states that would be applied to private parties, resulting in the Respondent not being liable in the same manner and to the same extent as a private museum under like circumstances. As discussed in our brief, even in the absence of such a clear direction from Congress, this Court should not interpret the FSIA as intending federal common law lawmaking and 20 years of experience with four circuits interpreting Section 1606 as written and applying state choice of law rules strongly suggest that Respondent speculation about problems that might arise is unfounded. But what is dispositive is that in the FSIA, Congress struck a comprehensive balance as to how claims against foreign states should be adjudicated. Even if possible problems without balance were to exist, it would be for Congress to address them. I am pleased to respond to any questions the Court may have. Mr. Boies, if we think that the District Court and the Court of Appeals did in fact apply Spanish law, would have applied Spanish law in the exact same way to a private person, wouldn't you lose? If my third proposition were wrong, that is if the Respondent being a private museum would have had federal common law applied to it, then I think the Court is right. That is, if the FSIA intended that state law be displaced even for private parties, and if that were the structure of the FSIA, then it would be applied to both the museum as well as the private museum. I would agree with that, Your Honor. Thank you. Well, there are certainly situations where a foreign sovereign, the analogy that you're supposed to be treated like a private citizen, you know, absolutely makes no sense. I mean, what if the issue is something to do with how you're managing your army? How are you treated like a private citizen in a situation like that? Whether or not you're properly denied asylum to somebody. How are you treated like a private citizen there? It strikes me that your case pushes that principle pretty far, and I'm not sure it makes that much sense across the board. Well, Your Honor, questions of how the state is managing its army or asylum would not come up in an FSIA action. Well, that seems to me to be avoiding the question a little bit. I'm sure you can imagine better than I can cases that would come up in that context that might not be a situation that could be replicated by a private citizen. Your Honor, I'm not sure I agree with that because you have to have commercial activity to start with. All right. Well, then what if a private citizen, you know, expropriated property in a way that a sovereign could, but a way a private citizen can't? I mean, if the foreign sovereign engaged in that activity, there'd be no private citizen analog. The private citizen analog here under state law is conversion. And the question is whether the private party or the foreign state is holding property improperly. There is an expropriation issue that was settled below which held that this was expropriation in violation of international law. Once you have a violation, then the FSIA kicks in. But it only kicks in with respect to commercial activities. It doesn't kick in with respect to the army or the asylum or anything else. So you're only treating the foreign state as being liable in the same manner to the same extent under like circumstances where the foreign state is acting like a private individual, i.e., engaged in commercial activity. Mr. Boies, I have two questions, one related to Justice Thomas' point. I believe the district court said that both California law and federal common law would adopt Spanish law. Why is it that we're here if you lose under both? Because the Ninth Circuit did not reach that issue of California law, which we think was erroneous. We did appeal that finding. But because of the way the Ninth Circuit decided the issue of federal common law, it never reached that issue. That's what I understood. With respect to Justice Roberts' question, and I'll ask the Solicitor General this, it seemed to have accepted the Chief's presumption that there were some international acts that would give rise to federal questions. And I think the U.S. is suggesting that the way to address those issues is not to change this rule about conflicts of law, but to address those problems with other doctrines like the act-of-state doctrine, correct? Do you have a different position than they do on that issue? I don't think I have a different position. I think I have a somewhat elaborated position. With respect to the FSIA, the FSIA carves out certain provisions, for example, like punitive damages, that are going to be special for state actors, for foreign states. Our position is that here, where the statute has not carved out those kind of exceptions, if you're dealing with commercial activity, state law ought to apply. We don't think that there will be situations in which there would be a special rule for the foreign state than for the private actors. There might be situations in which, under act-of-state or comedy or any other variety of other provisions, the court might limit what a private party could get, just as it might limit what a state party could get, based on considerations of comedy, international law, and the like. But I think the command of Section 1606 is that whatever rules are going to be applied to a private party should be applied to the foreign state when it's acting in its commercial activities. Thank you, counsel. What would happen if the choice-of-law rule of a jurisdiction took into account the fact that the defendant is an instrumentality of a foreign state? As I think some choice-of-law regimes do. What would happen under 1606 in that situation? 1606 says that the foreign state shall be liable in the same manner and to the same extent as a private individual. Under the circumstances, does that mean that that jurisdiction's choice-of-law rule would be partially abrogated by 1606? That, of course, is not this case, but I think that 1606 language would suggest that the state could not have a rule that discriminated against the foreign state. So I think that to the extent that the state tried to have a rule that would discriminate against a foreign state, 1606 would preclude that. Well, this would actually be something that works in favor of the foreign state, or at least it could be. But doesn't that difficulty suggest that 1606 really should not come into the picture until after the choice-of-law decision has been made? I don't think so, Your Honor, because if it comes into effect only after the decision is made, you cannot have the state being held to the same manner and extent of liability. You would have a separate choice-of-law that would be created that would direct to, perhaps, a separate rule of decision. And that would mean that the state would not be subject to the same liability to the same extent under exactly the same circumstances. So I don't think that could be consistent with Section 1606. Well, there's another statutory provision that could lead to a victory on your part, and you do mention it, the Rules of Decision Act, but you downplay it. Yes. You highlight 1606. Why do you do that? Just because we do emphasize the rule of decision, and I don't mean to downplay it, Your Honor. But we concentrate on 1606 because it is such, in our view, a clear statutory command of Congress and one that they fought a lot about. The FSIA was a decade in its making, and it was a comprehensive, as this Court has said on a number of occasions, resolution of issues. And the balance that they struck, which was a balance between the litigant against the state and the rights of the foreign state, is something where it was as clear as we think it is in 1606 that that was the right thing to emphasize. But we do rely on the rules of decision. And in addition, on the fact that when Congress enacted the FSIA, it did so in light of background principles of federalism, background principles of the strong presumption against creating federal common law, the context of the Richards case, where this Court relied on the same language in the Federal Tort Claims Act, as was later used in the FSIA, to reject an attempt to avoid state choice of law rules, even where there was, I would suggest, in the Richards case, a more plausible basis to do so than exists here. So we think that when Congress enacted the FSIA against all of those backgrounds, even in the absence of such a clear congressional command as exists in 1606, the right interpretation of the FSIA would be that it did not indicate an attempt to deviate from the use of state law and state choice of law issues. And certainly this Court has never interpreted a statute from Congress as silently intended to separate state substantive rules from state choice of law rules. Mr. Boies, some significant part of your argument seems to rely on a view that there is federal common law on one side, but only on one side, and I'm wondering whether that's right. Isn't there federal common law on both sides here? You know, the Claxon rule, which says look to state choice of law rules. That is itself a rule of federal common law, isn't it? I would have said Claxon was a decision to hold that the federal courts were compelled on the grounds of federalism to apply state choice of law provisions. I don't think that this is a situation where there's federal common law on both sides. Well, I guess what I'm suggesting is that Claxon points to using state choice of law rules, but in doing so it is itself an exercise of federal common law. That pointing to state common law rules is a federal common law rule. I would put it differently, Your Honor, that what Claxon is holding is that the state choice of law rules apply. Now, that is a federal decision, but I don't think it is a federal decision based on federal common law. I think it is a federal decision based on the fact that under Claxon and under Erie, there is not a federal common law that applies when the underlying action is a state cause of action. Mr. Boies, is it based on the Rules of Decision Act? Claxon, I mean. I don't believe that Claxon is primarily based on the Rules of Decision Act. I think it is predominantly based on the constitutional and federalism grounds that underlie the Erie case. And I think that Claxon, as I read it, was simply the recognition by the court that for the same reason that the federal courts were required to apply state rules of decision, they were required to apply state choice of law rules. Well, Mr. Boies, I understand that Claxon has been subject to some criticism. And why does it make sense if there is a federal interest in a state case, as there may be when you get to after deciding the choice of law question, why does it make sense that the federal court is restricted in assessing the application of that principle to the merits and not on the question of choice of law? I think that the constraint on the federal court would be the same with respect to merits and choice of law, Your Honor. I'm not suggesting that it would be different. I believe that the constraint on the federal court is the same for both choice of law and the underlying rules of decision. And that this court has been pretty consistent in not separating those two. I think Claxon should be read as the court saying that just as Erie required an application of state rules of decision, it also required the adoption of state choice of law provisions. Justice Thomas? Justice Breyer? Just to see if I understand this, your client is suing for conversion and other things under California law. So we imagine your client, Mr. Smith, and Mr. Smith is suing a private bank in Spain. And you'd say, well, what law would apply? And the answer would be, well, he'd be in a diversity, he would have to bring a diversity action if he were in federal court in California. And they would apply. First, we look to California's choice of law rules. And we're going to get into an argument about that. Would California, in fact, apply Spanish law or would it apply California law? But the first thing we say is, what law would California apply? On the other hand, if your client were suing basically, the Federal law, suppose it had something to do with a bank account or something, and then it's an arising under case, so we imagine Mr. Smith suing the bank and it's Federal law because that's his basic claim, his underlying claim. And so then we would do what the Ninth Circuit did and say, well, it's a Federal claim, he'd be in Federal court arising under, and we look to what the Federal courts would apply, what's their choice of law doctrine. Am I right or wrong? I think you're exactly right. Our position is that Mr. Smith's case against the private bank should come out the same way as our case against the state actor, recognizing that the state actor here is engaged in commercial activity. Justice Alito? Justice Sotomayor? No, thank you. Justice Kagan? Justice Gorsuch? Thank you, Mr. Boies. Thank you. Ms. Hansford? Mr. Chief Justice, and may it please the Court, rather than creating an independent liability standard for FSIA cases, Congress directed that a foreign state should be liable in the same manner and to the same extent as a private individual under like circumstances. That language provides a clear answer to the question presented. As Justice Breyer indicated in his last question, if every fact in this case were the same, but the foundation were a private art gallery, everyone agrees that a court would use state choice of law rules to select the rule of decision for petitioner's property claims. Section 1606 requires the same treatment in a case against a foreign state. Now that result comports with first principles. Unless federal law provides otherwise or Congress directly specified, state choice of law rules normally apply. But here, first principles are just icing. The clear language of Section 1606 easily resolves this case. I welcome the Court's questions. But you seem to suggest in your brief that if the interests of the foreign sovereign are not taken and if they're dismissed, if that approach is too dismissive of those interests, we should look to other sources. We don't think there's any problem across the board in applying state choice of law rules. I think in a particular case, once the law is selected, the application of a particular law could raise issues of such interest to foreign policy that that is a basis for creating federal common law on that particular issue. And the active state doctrine is the perfect example of that, what the Court did in Sabatino. But we do not think that that applies across the board for choice of law rules. And while a respondent in their brief suggests that using state choice of law rules somehow fails to give sufficient weight to foreign policy concerns, we just don't think that is correct. We think that in the 30 years that this has been the rule in the Second Circuit, we're not aware of any concerning decisions at the choice of law level. And in fact, of the leading decisions, the two decisions in the Second Circuit, Carajabodas and Barconchik, and the Ovesi decision in the D.C. Circuit actually used state choice of law rules to select foreign law. And somewhat ironically, the leading case in the Ninth Circuit, the Schoenfeld decision, used federal choice of law rules to select California over Mexican law. And in that case, it was actually the foreign instrumentality that was arguing for state choice of law rules. So I think the idea that there is something inherently in tension with foreign policy concerns of using the normal framework is just not borne out in practice. Well, I have to say, it does surprise me that the representative of the federal government can't envision a situation where it may be contrary to their foreign policy to apply a particular State's choice of law. Now, I understand that may be unusual, but you seem to think that the federal policy is always going to be to apply the foreign law. And, you know, citing those cases where they did, contrary to their own State law, as examples about why this is consistent with the federal government. But is it really just impossible to imagine a case where the State choice of law issue, not the substantive law, would itself be one that infringed upon federal policy to such an extent that you would want to apply a different choice of law rule? No, Mr. Chief Justice. It is not impossible to imagine. And I can give you an example, but before I do, I just want to note that that issue can arise at any stage. It can arise as to any merits rule. Once law is selected, the application of a particular law could infringe on foreign policy concerns. And we don't think, and I think nobody has suggested, that that is a reason to create substantive federal law of liability under the FSIA instead of using State rules. So we think that if that situation were to arise, it hasn't so far, but if it were to arise, those normal principles would kick in and would take care of that. And so to give you an example. Even at the choice of law stage? Yes, even at the choice of law stage. Our basic submission is that choice of law is really no different than any other aspect of State law, and because Congress has made the judgment to defer to State's policy judgments in general, there's no reason to carve out choice of law principles from that. And I think that the reasoning of the Claxon decision goes to that. I think the most closely analogous context is really the Richards decision under the FTCA, and I think that is a way to avoid those difficult questions that you were raising, Justice Kagan, instead of looking all the way to Erie and Claxon, look at what the Court did in Richards, and there the Court said that the FTCA, because Congress has shown an interest in tying matters so closely to State policy judgments, we really need a pretty specific indication to think that choice of law would be treated differently in this type of interstitial legislation. Ms. Hanson, I'm sorry. I mean, I'm not sure my question matters at all. In fact, I suspect it doesn't. But I guess I would like to know, what do you think Claxon is? Is it a constitutional decision? Is it a statutory decision in the way Justice Barrett suggested? Or is it, in fact, a federal common law rule? Claxon may be a federal common law rule itself, but I don't think that means that it empowers courts to create federal common law. I think it does the opposite. So I think that those two points come apart, and that may be why it doesn't ultimately matter to this case, even if we're looking at it in terms of first principles. Exactly. Chief Justice, just out of interest, imagine a state, let's say California, or make up a state, Calachusetts or something, and it has a choice of law rule which is under no circumstances will a court ever give any weight whatsoever to the rule of Myanmar. Okay? That's their rule. And that might interfere with the policy that underlies this, and maybe it would be preempted. I don't know what the ground would be exactly. It's sort of like there was a case out of Massachusetts. But that could be, I think, the kind of thing that would raise the question. Absolutely, Justice Breyer. And that's exactly where we think those principles we lay out at pages 21 through 22 of our brief would come in. So how that would be analyzed is does that law represent Massachusetts creating foreign policy in a way that is preempted either by something specific or some sort of field preemption, and it would be very much the Garamendi-Zernick line of cases, and it would apply the same way to a choice of law rule. Because this is a choice of law rule, there's also the additional layer that there would be the due process type of analysis if that choice of law rule was used to apply Massachusetts law to something that doesn't have a sufficient connection. So you have that additional check. But just in the same way that you would apply that to a substantive rule down the line in an FSIA case, you would apply it here. And one other point on that is a lot of these foreign policy types of considerations could come up in a case against a private entity as well. If the foundation were a private gallery, I think a lot of the same foreign policy considerations would come up. And so there's really no silver bullet here of creating FSIA-specific choice of law because the same issues would come up in a case against a private entity located abroad. Would you be less comfortable with the position you're taking if at some point in the future the court were to say that federal law cannot preempt state law simply based on federal interests that are not embodied in a statutory provision that actually conflicts with state law? I think if this court were to substantially narrow preemption, I guess that would be an argument for reading 1606 a little bit differently. I think the FSIA was drafted against the background of preemption principles as they exist. But I think another way to think about 1606 in that circumstance would be as a matter of federal law specifying that you're looking to state law principles, except to the extent that 1606 superimposes a layer on top of that. So I think there would be that way of going about it. Could I ask you the question that I asked Mr. Boies about what would happen in a situation where a jurisdiction's choice of law rule treats an instrumentality of a foreign state differently from a private individual or a private entity? What would happen in that situation? I agree with Mr. Boies that Section 1606 essentially says look at the law that applies to the private entity or the private individual and apply that law to the foreign sovereign. So I think that's the normal operation of it. I think that's generally how it's understood in the FTCA context, which has the same provision, that if the law does draw a distinction between public and private, you look as a general matter. Now, I will note that it's possible that there could be some particular sensitivity, some extra FSIA principle that would operate against that in a particular case if there was really a sensitivity involved, but I think that is the import of the plain language. Well, in light of that complication, why isn't it simpler to analyze this case just under the Rules of Decision Act? You could analyze it under the Rules of Decision Act, Justice Alito. I think because the Rules of Decision Act says unless law provides otherwise, and we think that Section 1606 does provide otherwise, and we think that this equal treatment principle is the preeminent principle here, we think that that's the most direct way to get there. Well, do you think there's some problem with analyzing it under the Rules of Decision Act? What is the problem? Is the problem the opinion in Claxon? Can't Claxon easily be understood as simply based on the Rules of Decision Act? I think the problem is just that by its own terms, the Rules of Decision Act doesn't seem to apply when there is an on-point statutory provision, and we think that Congress could alter this provision. Well, I understand, but the premise of this is that 1606 may not come into play until the choice of law question has been decided. And I would push back on that point, Justice Alito. I think that that does not work as a matter of statutory text, but I also think the Court has already crossed that bridge in the Richards decision, because it did interpret the identical same manner and to the same extent principle as applying at the choice of law stage, and, in fact, as the primary reason for incorporating state choice of law principles. So that question that Justice Thomas asked, I do think Richards is an answer to that, as well as just the textual principle that you can't impose liability in the same manner if you're using fundamentally different rules. Justice Thomas? No. Justice Alito? Justice Sotomayor, anything further? No, thank you. Justice Kagan? Justice Barrett? No. Thank you, Counsel. Mr. Stauber? Mr. Chief Justice, and may it please the Court, nothing in the Foreign Signs of Immunity Act or its foreign affairs origins mandates that federal courts sitting in judgment of a foreign state's private or public acts must employ a forum's choice of law test. Where the forum has little or no connection to the claims or the basis for jurisdiction, and the test ignores the federal and foreign concerns that underpin the FSIA. In the absence of an explicit statement, Congress did not intend that California's choice of law test should determine the substantive law to apply to a foreign state alleged to have committed a wrong within its own borders. But for Mr. Casere's retirement to San Diego, California would have no interest in this case. As this Court in Verlinden tells us, the FSIA rises out of Congress and the Executive's shared goals of normalizing relations among nations during the Cold War and bringing the U.S. in line with international law norms, as recognized by this Court in Philippi, Germany. To achieve these goals, the FSIA establishes a federal regime that is intended to ensure fair and uniform treatment regardless of where in the United States a foreign state is held. Because it implicates foreign relations, the choice of law analysis fits comfortably within a discrete, recognized federal common law enclave, one that does not intrude into an area of traditional state interest. Once federal common law determines the proper substantive law, that law is applied to the foreign state in the same manner and to the same extent as a private party under like circumstances. The foreign state doesn't get any special treatment in the Court's liability analysis. Section 1606 relates to the application of substantive law, not to the choice of law test, the precursor to the liability analysis that determines which substantive law to apply. Claxon recognizes that federal courts exercising diversity jurisdiction must apply the forum's choice of law, but FSIA cases do not arise under diversity jurisdiction. Moreover, Claxon's stated goal of deterring plaintiffs from shopping for a more favorable forum by taking their state law claims across the street to a federal court is not relevant, as Congress wanted FSIA cases to be litigated in federal courts. I would be happy to address any questions that the Court may have. Counsel, I don't quite understand how the sovereign that can be treated in the same manner as a private individual, if you apply a different choice of law rules. Well, Your Honor, in the context of a private party, a private party is before the Court on diversity. A foreign sovereign is not before the Court on diversity. But as Verlinden tells us, it's more before the Court akin to a federal question. Therefore, to put the private party and the foreign sovereign in a like circumstance, we actually have to put the private party in a foreign or more akin to a foreign question in order to get them into a like circumstance. And in that case, federal common law would apply the choice of law test, not a foreign states. I guess I don't understand the premise of your answer. I mean, you seem to be suggesting that we should understand this as a federal question case, but these are not federal question claims. These are state claims. Correct. So why should we think of it as like a federal question when this suit is not based on federal law? Because this, but for the Foreign Sovereign Immunity Act, the foreign state would not be before the United States federal courts. The underlying claim may be a California state claim. It may be, in this case, a Spanish foreign claim, which is why, as the Court was discussing earlier, you have to always see it through the lens of the foreign state and the fact and the manner and the treatment in which it was brought and held before this court. Only in that context can then you have a like circumstance where the plaintiff is likewise not on diversity before the court, but in some question that brought it before the court, addressing a particular concern. But that seems to be treating the foreign state in a way that's really the opposite of the way the FSIA instructs in 1606. Because what I take 1606 to essentially be saying is once you've decided that the sovereign immunity doctrines of the FSIA don't apply, the foreign state really isn't very special. And your answer to Justice Thomas was essentially to say, yes, even once sovereign immunity does not apply, the foreign state is extremely special and has to be treated differently. No, the foreign state needs to be treated in a fair and balanced manner. It does not get extra special treatment with respect to the liability which may befall it. As in this case, we heard earlier, if in fact Spanish law applies, the private party in Spain would also, under these facts, either have retained the painting or lost the painting. Because the substantive law would have applied to the same. Right, but you're saying that even though the sovereign immunity threshold has been met, there is no sovereign immunity here, still the foreign state gets different treatment with respect to choice of law. And I'm saying why? No, we're not saying that the foreign state gets any different treatment with respect to the choice of law. We're saying that in order for you to put the like circumstance together, the private party would not be before the Spanish private party, would not be before the U.S. court on diversity grounds. Because the foreign state is not here on diversity grounds. Now you're going to have to run a whole lot of traps to get a private Spanish party before a U.S. court when the property is not in the United States, when the act which caused the wrong or the loss of the property or the commercial act didn't occur in the United States. We submit diversity would probably never work to get the private party here. But aside from that, the like circumstance is not based on diversity. So let's follow through what you say. I see what I think I see it. This is the foreign state. Spain shall be liable in the same manner and to the same extent as a private individual under like circumstances. Yes. Your view is the like circumstances you're in a federal court. Yes. Okay. Here they happen to be suing under California law for a property law conversion, I think. Yes. Okay. Now, let's see. So we pretend that we are in a federal court suing for conversion. How do we get into federal court? I mean, it's sort of interesting. I mean, is it supposed to be an arising under case? Do we pretend it's arising under? Maybe we should pretend it's a bank conversion case, in which case maybe the law of the Vatican applies. I don't know. I mean, how do we do this? It sounds a little complicated, your view. At least the opposite view is simple. You say what it was. It's a state claim. State claims belong here under these circumstances under diversity jurisdiction. And so we apply California law. Okay. But what is your view? We don't even know what the claim is supposed to be. Right. Your Honor, we would — Justice, we would submit that our view is actually the simpler view, because if you have a uniform Federal common law choice of test that will apply in all of the Federal circuits and, therefore, apply in all of the 50 States, then you will not end up with a disparity of treatment for a foreign State regardless of where it appears. Okay. The only problem with that is I can't think of any private individual who would be treated that way. Yes, your Honor. You would be treated — Justice, you would be treated differently on your choice of law test, in particular on a State forum, with bias towards the private party if you were in Kentucky or if you were in Michigan. And at the present time, the choice of law test by forums, the majority use the restatement, which is used by the Federal common law approach. And we can never forget that the underpinning reason for the Foreign Sovereign Immunity Act was to take both the executive branch and the courts out of the ad hoc basis of disparate treatment of foreign sovereigns on a case-by-case basis. So our approach actually brings predictability, uniformity, and prevents the hostile outcomes which we submit you do not actually have a resolution for. Because as this Court, most recently in Philipp v. Germany and in Simon v. Hungary, passed on the question if international comedy is an available affirmative defense. And in fact, as the Turkish government recently learned in the Washington, D.C., courts, international comedy was not available to it. This case we would submit is a test case for you in the study that after the fact, stepping in by the United States or by the courts later in a case to remedy what could be a constitutional violation or an overreach of a state in its territorial interest does not work. This case was originally filed in 2005. We didn't get to the choice of law question until 2015. So the foreign state has been in litigation for 10 years, no longer has international comedy been available to it, and foreign states do not enjoy, as a private party does, the benefit of due process. If this is to be decided under Federal law, Federal common law, who is going to decide that and on what basis? If this is to be decided under Federal common law choice of law? Yeah, Federal common law choice of law. It will be, as happened here, the district court, which had jurisdiction on the Foreign State Act, and applying it as it did. No, I mean, what is going to be the substance of this Federal common law choice of law principle? What is going to be the substance? Where are we going to find it? We'll find it where we now find it. We find it in the restatement. Why? Because that is where the Federal courts have decided to look. Why? Because those are the principles which take into consideration the international relations which underpin the Foreign State Ability Act. Well, what if, I mean, what if the Ninth Circuit says, we're going to look at the second restatement, and another circuit says, we're going to look at the first restatement, and another circuit says, we don't like either of those, we're going to develop our own choice of law rules. Would we have to decide what the choice of law rule is? I think that is where this Court is very well positioned to set forth a uniform choice of law rules in the Federal common law and the Foreign State law. Well, why are we well positioned to do that? That involves very serious policy questions, doesn't it? It invaries, I think, a very straightforward application, as this Court did most recently in Philipp v. Germany, where it looked to the guiding international norms, it looked to the conflicts of law, it looked to the restatement to define the definition of a violation of international law. That is something that this Court is well positioned to do, to provide the guidance to all the Federal circuits as to the application and use of the Federal common law choice of law test. It seems to me that you're seeking the benefit of the fact that you're, or your client is, that it is a foreign sovereign, sort of at every different stage of the analysis, before you can get held into court, and how you can be treated at different stages. And it seems to me that at some point, 1606 sort of says, okay, you've gotten the advantage of being a foreign sovereign in our treatment, in our courts, but no more. Now that you've gotten down to this level, we're going to treat you like a private party. Right. And that should extend to choice of law issues at that point, as any other. We would submit that it doesn't trigger until actually you get to the substantive law, which is the choice of law. I'm sorry, not the choice of law, but actually the substantive law that applies. The choice of law and the substantive applicable law are not necessarily one and the same. They may be in Claxton, they may be in diversity, but that is not for which we do sit. And therefore, the overarching policy that drove the Foreign Sovereign Immunity Act in 1976 was in fact that a foreign state, we're not asking for special treatment, we're not asking for different treatment. Once we're before the courts, we're asking for fair and balanced treatment, but always acknowledging the fact that we are a foreign state. And we never leave that distinction behind. Where do you get that from, where you draw the line and you say, well, 1606 doesn't kick in until after the choice of law question? Where do you get that from? Is it from the words of 1606? Is it from some idea of legislative history? Is it from some idea of good foreign relations policy? Where is it coming from? I would say, Your Honor, Justice, it's coming from all of those. First of all, the Foreign Sovereign Immunity Act, when Congress drafted it, in its legislative history, it speaks ultimately in its adoption not to Claxton. It, in fact, removes the foreign sovereign from diversity. It could have simply added to 1332 and included these types of claims. It did not. It created 1330, which is not based on diversity. I would submit it's in the language itself. The language does not state that you use a state forum's choice of law test. It simply states that you treat the private party and the foreign state as to its liability. Right, but you're not going to be liable in the same manner and to the same extent as a private individual if two different sets of law are used. That's correct, Your Honor, but they're not going to be treated in the same manner and as a private party. If they're now shifted over to a diversity setting, which wasn't the basis of jurisdiction in the first place. The rules of decision came up as a question that was in the court's interest, and I want to point out that the rules of decision does not actually apply here. Because under the rules of decision, they're based on diversity. We are not sitting here in diversity. The rules of decision were passed in 1908. They precede the Foreign Sovereign Immunity Act of 1976. I also want to point out that the Foreign Sovereign Immunity Act, as this court in Verlinden tells us, applies to both U.S. citizens and non-U.S. citizens. In that scenario, as we know from the Holy See case in the Sixth Circuit, you may have a situation where you have a class action, and class actions are starting to arise in this expropriation context. And in a class action from this court in Trout, we know that each individual plaintiff is subject to a separate choice of law test. So what will happen here in this scenario is you would have, in any one of the cases that are coming up in which a plaintiff is a foreign citizen, but this court takes jurisdiction under the Foreign Sovereign Immunity Act, you would have a state's choice of law test applying to decide what the substantive law is to, for example, a Spanish citizen who's filed a case against the Kingdom of Spain. Or in the case that is proceeding now before the District Court of Columbia in Simon v. Hungary, you would have a Hungarian citizen who is a member of the class, and their choice of law test would be based on D.C. as to their case against the Hungarian state. We submit, Your Honors, that the foreign relations concerns that drove the creation of the Foreign Sovereign Immunity Act are the same foreign relations concerns that continue to drive its application today. And the use of a state law forum choice of test is not called for, required, or mandated by Congress or by the statute. Roberts. Can't the various considerations that you've been talking about be applied fully at the liability stage? Why is it necessary that — is it the only way you can protect the foreign interests if the Federal Government, for example, has that interest, is at the choice of law stage? Can't those be taken into account when you get to the substantive law? I mean, if there's some problem with the state choice of law because the choice they've chosen is one that prejudices foreign sovereigns in a way that's contrary, as our Federal Government would say, to the national interest, why can't you take that into account at that point? It's just a starting point, in other words. You can't take it into account, Your Honor. We're not saying you can't take it into account, but we're saying that you need to, in order to provide predictability and uniformity, which is one of the tenets of the Foreign Sovereign Immunity Act for the foreign, they need to know, once they're hailed into the U.S. Court, whether they're hailed in Arizona, in Iowa, in Michigan, or Kentucky, that they're going to be treated fairly and they're going to be treated the same. To find that out 10, 12, 15 years later after the litigation has been going on undercuts the very policies of the Foreign Sovereign Immunity Act. Well, I think it's pretty fair at that stage to tell them you're going to be treated the same as a private party when it comes to the question of choice of law. Now, maybe you've got a special argument based on your foreign status, and you can raise that when you get to the point, say, okay, choice of law is this, and you say, well, here's why it doesn't protect our interests, and maybe you get Ms. Hansford's client to come in and agree with it. I just don't know why that has to take place at the choice of law stage. Because you would end up with a different outcome, disparate treatment to the foreign state, if it was hailed into a different state. If this case had proceeded in New York, where Mr. Kassir first moved to when he came to the United States, we would have a different outcome. If this case proceeded in Ohio when he moved there in the 1950s, we would have a different outcome. But for the fact that Mr. Kassir chose to retire to California, we now have a third different outcome. That is not consistent with the concerns that were addressed, being addressed under the Foreign Sovereign Immunity Act. And we would submit one line in 1606. Welcome to the United States. That's how the courts work. And a private citizen of the United States moves from New York to Ohio, the law that applies to him is going to change as well. And we're dealing with a law that says you apply the law to the foreign sovereign as if a private party. And the alternative is what we have said is an unusual situation, where you're asking the courts to devise their own body of law that's going to apply in this situation. We don't think we're asking the court to devise its own body of law. We think we're simply asking the federal court, which is sitting within a unique federal enclave of foreign affairs, where it is precisely strong and well-reasoned to sit in, to create a uniform application choice of law test to apply to every foreign state. Counsel, you suggest that if you should lose on the choice of law question, that there are, in fact, constitutional constraints in this case that would prohibit the application of California law. Your friends on the other side say those arguments have been waived, this litigation has been going on long enough, and we shouldn't take those up or allow those to be presented on remand. I wanted to give you an opportunity to respond. I appreciate that, Your Honor. We do not think those questions have been waived at all, Your Honor. As we articulated earlier, due process is a question that is always at play. Well, due process is always in play until you fail to raise the argument. Well, we did raise the argument. Then it usually isn't in play. So was it in play? Was it preserved below? What have you got for me on that? Sure. We would submit it was preserved below. We have consistently argued and presented to the court the due process concerns about the application of a California statute, which would divest the foreign sovereign's agency or instrumentality of the property right, which was already invested at the time this case was brought, if you end up applying California law. And it's not until that application of California law comes into place that you have the constitutional due process violation. How long has this case been going on? This case, Your Honor, started in 2005, and it has been going on now for 15 years, which is why we submit it is precisely a case that is ripe for this court to affirm the Ninth Circuit's application of the, in this particular case, the federal common law choice. And in particular, since it landed both under the California choice of law test and under the federal common law choice of law test, at the same result, we do think that, in either way, this court can affirm the Ninth Circuit's decision. I guess I'm just wondering if I were to think that the Chief Justice's line of questioning has some force and that the state law should be the default, but there might be some constitutional backstop arguments. And if I have serious doubts about whether those constitutional backstop arguments have been presented, whether it might be time to call this one to a close. Call which one? The case itself as a close? The case, yeah. I mean, 15 years, 16, whatever, 17 years it's been on choice of law. We haven't gotten past choice of law. We did. Well, we did get past choice of law, Your Honor, in 2015 with the motion for summary judgment is when the choice of law was decided. And then we did a full trial on the merits. And based on a full trial on the merits, the court determined that the piece of argument was correct, Your Honor. I appreciate that. But here we are back at the starting gate potentially, right? I mean, we could have this case start all over again in some ways. Well, in some ways we would, which is why we think this is not a case because it would have gone both to the Thies and Buena Mesa under California choice of law and under federal common law choice of law. But the trial court, which did examine the issue and whose factual findings are due deference, did find that Spanish law should apply to the ultimate outcome. So I would share this Court's concern that, yes, I think you bring this case to a close, either under the California choice of law test or the federal common law choice of law test. But I do think it is time to bring the case to a close. Well, this is not the issue before us. But what can you state in simple terms? What is the arguably relevant difference between the California's choice of law rule and the restatement? Yes. California's choice of law rule test does not take into consideration the very federal and international concerns which are taken into consideration under the federal common law. In other words, in this particular case, California's choice of law test does not take into consideration the Terrorism Declaration or the Washington Principles or the Holocaust-era Art Restitution Act of 2016. It does not take into consideration those national policies which formulate the United States position that these cases should be brought to a fair and just resolution through some sort of negotiation or alternative resolution in respect for the laws of all states, not just the United States. And by forcing a federal court to use the state law choice, you are in effect handcuffing that federal court judge who is attempting to administer their case in a fair and balanced way to take into consideration these competing interests which are at play in extraordinary expropriation cases. So you agree then, you agree with the district, that the district court was wrong. You agree with your opposing counsel that the district court in saying that California would choose Spanish law. You both think he's wrong. No, I think the district court was right. Well, then it becomes the same law, Spanish law. What are all these differences you're talking about? Now, I am saying that in applying the California choice of law test, the district court applied it correctly and landed at the result that under the California choice of law test, Spanish law applies. It also applied the federal approach correctly and landed at Spanish law. What I am saying is that by this court mandating or allowing it to proceed in 50 different states under 50 different choice of law tests, you will be telling a federal court judge, 700 different federal court judges, that when cases involving the expropriation exception, cases which by definition include international concerns in our relations among nations, that you are forced to use that foreign choice law test which may not, in particular in Kentucky, in Michigan, or in any one of the states that doesn't currently use the restatement, you may not take those federal and international concerns into consideration. Counsel, I'm too much a practical person for this argument that you're raising. If California law and federal law, you say both correctly, point to the application of Spanish law, what are you afraid of? You're afraid of something. You're afraid that they're right, that some aspect of California law can hurt you, correct? No, Your Honor. I would beg to differ with that. And if I've given that impression, I am not doing my job as an advocate. We welcome an analysis if that's what this court so thinks is necessary under the California choice of law test because, as we said earlier, the district court did it correctly with respect to its factual deference and its application of law. Now, I understood from the briefing by everyone that in most circumstances, federal and state choice of law provisions would come out the same way. Am I correct on that assumption? In this particular circumstance, it would. In 27 states which use the restatement, we think it would. But the problem is that when you take this case and you bring this case forward, it speaks to the entire federal circuit. And our concern being expressed here is not for our particular case at hand, but the implications for foreign sovereigns who are hailed into jurisdictions which don't use the restatement, may choose to use a state law choice of law test that is biased. And that may raise constitutional claims, as the petitioner in the SG stated, correct? It raises constitutional claims. It raises international comedy claims. But you're not claiming that any of those are raised here? At the present time, it would be if the court decided, that is the Ninth Circuit, decided to apply California's choice of law test in a way that applied California law, we would submit that would be a constitutional violation. It would be an extraterritorial reach of California State law, which California State has no interest in this case but for an individual. In this case, a U.S. citizen. But in another case, it could be a non-U.S. citizen who chooses to move to Alabama or Florida or anywhere else. And what would preclude you from raising that argument? We don't think anything would preclude us, Your Honor. Thank you, counsel. Justice Thomas? Justice Breyer? Can everyone agree that this is a beautiful painting? Yes, it is, Your Honor. It's a very, very beautiful painting. And we take with all due grace and respect this Court's attention to this particular case. And that is why we are not advocating necessarily for one outcome or the other. We are advocating for a fair and balanced treatment of the foreign state in this particular case. In this particular circumstance and when it comes to the application of a choice of law test under the Foreign State of Immunity Act. Justice Alito? Anything further, Justice Sotomayor? No, thank you. Justice Kagan? Thank you, counsel. Mr. Boies, do you have rebuttal? Yes, thank you, Mr. Chief Justice. First, let me just clarify. We disagree that the Rules of Decision Act only applies to diversity cases. On page 13 of our reply brief, we indicate some authority of the contrary. The basic point I want to make is that the Respondent cites no case, and we are aware of none, where this Court has separated state choice of law from state rule of decision. Whether it is viewed under the Rule of Decision Act, whether it's ruled under the Clarkson decision, this Court has repeatedly declined to separate state choice of law from state rule of decision where state causes of action were involved. In this particular case, Congress has been clear in Section 1606 that the state actor should be liable in the same manner to the same extent as the private party under like circumstances. There is no way I respectfully suggest that you can read that language and say that you can have different choice of law rules apply when a state actor is involved than when a private museum is involved. A private museum could face exactly the same lawsuit as this public museum could face, based on exactly the same painting and exactly the same circumstances. And the command of 1606 is that the same rule ought to be applied, whether it is a good rule or a bad rule is for Congress to decide. The arguments Respondent make are fundamentally arguments that 1606 should have been drafted differently. We think it was drafted the right way, but whether it's right or wrong, that is the way Congress adopted it. We've also, and I said this at the beginning, we've had 20 years of experience, including in the Sixth Circuit, which is the circuit with Michigan and Kentucky that Respondent's counsel mentions, where the court has interpreted 1606 consistent with its language and applied state choice of law rules. We haven't had any problems in those situations. So the issues we think from a policy standpoint are just speculation that are not consistent with what the historical experience has been. But whether or not it is a good idea or a bad idea, we think 1606 is clear on its face. Thank you, Counsel. The case is submitted.